# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHAEL JOHN WINSCHEL,**
          **Plaintiff,**

**-vs-**                                               **Case No. 6:08-cv-1750-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**
          **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on March 3, 2005, alleging that he became unable to work on July 15, 1999 (R. 98, 114, 377). His claims were denied initially and on reconsideration. Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("the ALJ") and, on May 13, 2008, the ALJ issued a decision denying Plaintiff's applications (R. 13-21). On August 22, 2008, the Appeals Council denied Plaintiff's Request for review (R. 6-8), and this action timely followed (Doc. No. 1). The parties have consented the jurisdiction of the United States Magistrate Judge, and the matter is fully briefed and ready for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to degenerative disc disease, spondylosis, chronic obstructive pulmonary disease (COPD), depression, and numbness and pain in his feet (R. 106, 127, 136).

*Summary of Evidence Before the ALJ*

Plaintiff was born in 1960 (R. 143), making him 43 years old when his disability insured status expired on March 31, 2004, and 48 years old at the time of the ALJ's decision (R. 96, 98). He completed the 10th grade and vocational school, and obtained a GED (R. 140-41; 400-01). Plaintiff has relevant work experience as a machine operator, stocker, truss builder, and welder (R. 117, 416). He testified that he is the caretaker for his elderly mother, doing housework and shopping, meal preparation and driving her to appointments (R. 107, 410-11).

The medical record for the applicable time period is set forth in detail in the decision and, in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's specific objections. The record shows that Plaintiff was treated by a variety of practitioners for various physical and mental ailments, and the record also includes reports from examining and mom-examining state agency consultants. By way of summary, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease; COPD; anxiety disorder/obsessive compulsive disorder (OCD); and peripheral vascular disease with stent placements (R. 15), and the medical records support that uncontested finding.

In addition to the medical evidence, the record contains reports and testimony from Plaintiff, as well as testimony from a Vocational Expert ("the VE"). Based on a review of all of the evidence, the ALJ concluded that although Plaintiff had severe impairments, he did not have an impairment or combination of impairments that met or medically equaled a listed impairment set forth in 20 CFR Part 404, Subpart P, Appendix 1 (R. 16). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with an at-will sit/stand option (R. 16), and found that Plaintiff was limited to unskilled or semiskilled work, secondary to his mental impairments (R. 16). Relying on testimony from the VE, the ALJ determined that there was a significant number of

jobs in the national economy which Plaintiff could perform, given his condition, and that therefore, he was not disabled (R. 20-21).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff raises three issues on review, asserting that: 1) the ALJ failed to apply the correct legal standards to the expert medical opinion evidence; 2) the ALJ failed to apply the correct legal standard with respect to formulating the hypothetical presented to the VE; and 3) the ALJ failed to

-3-

comply with his duty to ask the VE whether his testimony conflicts with the Dictionary of Occupational Titles ("DOT"). The Court treats each, in turn.

## *EVALUATING MEDICAL OPINION EVIDENCE*

Plaintiff asserts that the ALJ erred in his evaluation of the opinions of a treating psychiatrist and a consultative examiner.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

-4-

Applied here, Plaintiff asserts that the ALJ "did not give any weight to Dr. [Adly] Thebaud's expert medical opinion and did not articulate any reasons for rejecting Dr. Thebaud's expert medical opinion." (Doc. No. 14 at 8-9). As noted by the Commissioner, however, while the medical record contains Dr. Thebaud's treatment notes, it does not include any "expert medical opinion" from Dr. Thebaud (R. 369-76). Thus, there is no "opinion" to evaluate.

The treatment notes indicate that Plaintiff saw Dr. Thebaud for four visits from January 8, 2008 to April 10, 2008. *Id.* On mental status exam on his first visit, Plaintiff was cooperative and coherent and fully oriented as to time, place and person (R. 375). Concentration was "ok," memory was "good" and insight and judgment were deemed appropriate. Mood and Affect was anxious and irritable and Plaintiff exhibited "flight of ideas." (R. 375). Plaintiff was diagnosed with OCD[1]–GAD[2] - Social Anxiety, and a GAF[3] was assessed at 54. Plan was to initiate medication and refer Plaintiff to counseling (R. 376).

On return visit one month later, condition was reportedly unchanged and his medications were increased (R. 371). Mental status remained alert, oriented, with good memory and appropriate insight and judgment. *Id.* On the third visit, in March, mental status examination remained unchanged and, although Plaintiff reported doing "ok on meds," his medications were changed as he was still experiencing symptoms of depression and anxiety (R. 370). On final visit in April, his mental status continued to be alert and oriented, and his assessment and condition remained unchanged (R. 369). There is no indication in the treatment notes that Dr. Thebaud found Plaintiff to be restricted in any

---

[1] Obsessive-Compulsive Disorder

[2] Generalized Anxiety Disorder

[3] Global Assessment of Functioning. A GAF rating between 51 and 60 reflects moderate symptoms. *Wind v. Barnhart,* 133 Fed. Appx. 684, 687, n. 1 (11th Cir. 2005).

-5-

way, nor did he place any limitations on Plaintiff's activities or purport to offer an opinion as to his capabilities.

Contrary to Plaintiff's argument, the ALJ did, in fact, consider the treatment records and did not discredit them. To the extent Dr. Thebaud diagnosed Plaintiff with OCD and anxiety disorder, the ALJ did not reject that conclusion, but expressly found Plaintiff to have the severe impairment of both disorders (R. 15). The ALJ also expressly noted that "secondary to [Plaintiff's] mental impairments, [he] is limited to unskilled or semi-skilled jobs." (R. 16). To the extent Plaintiff appears to contend that the GAF assessment, which remained for those four visits at 54, is an expert medical opinion entitled to great weight, he is mistaken. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5, 2005 WL 1317040 (11th Cir. 2005) ("We note, however, that, as the Commissioner concedes, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)."). [4]

Plaintiff next contends that the ALJ erred in failing to make clear the weight accorded to the expert medical opinion of Dr. Barber, an examining consultative physician. The ALJ acknowledged Plaintiff's orthopedic examination with Dr. Barber, and noted the largely benign findings of that examination in his decision (R. 18, 275-292). Nonetheless, according to Plaintiff:

> Dr. Barber's expert medical opinion was that Mr. Winschel could only sit 4 hours, and walk and stand 2 hours each in an 8 hour workday (Tr. 288). These limitations prevent Mr. Winschel from performing light and sedentary work. None of these limitations were mentioned in the ALJ's findings (Tr. 18).
> * * * The ALJ does not tell us what weight he gave this evidence when he determined that Mr. Winschel could do the full range of light work (Tr. 16).

---

[4] To the extent the scores represent a picture of Plaintiff's functioning on a particular date and time, the Court notes that these scores were prior to any effective treatment and do not establish an impairment that was disabling for 12 months. Indeed, Plaintiff's GAF in January 2007 was assessed by another provider at 63 (R. 293). A rating of 63 reflects mild symptoms. *Wind, supra,* 133 Fed. Appx. at 687, n.1.

(Doc. No. 14). This argument fails to persuade in that the ALJ did *not* determine that Plaintiff could do "the full range of light work." Indeed, the ALJ noted that "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (R. 20). The ALJ expressly found Plaintiff to have the RFC to perform light work **except** that Plaintiff required the option to alternate between sitting and standing as necessary and, secondary to his mental impairments, he was limited to unskilled or semi-skilled jobs (R. 16). This finding is not inconsistent with Dr. Barber's opinion and is otherwise supported by the substantial evidence of record. No error is shown.

### *HYPOTHETICAL QUESTIONS*

Plaintiff's second objection is that the ALJ failed to present a properly supported hypothetical to the VE that included all of Plaintiff's impairments. Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Here, Plaintiff contends that the ALJ presented a hypothetical to the VE that failed to include the ALJ's finding that Plaintiff had "a "moderate" limitation in maintaining concentration, persistence, and pace. . . " (R. 16). The ALJ, however, made that finding at steps two and three of the sequential evaluation and did not include such a restriction in his RFC determination made at step four of the evaluation process. As this finding is supported by substantial evidence and was made in accordance with appropriate standards of law, there is no error.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

As set forth in the administrative decision, the ALJ evaluated the severity of Plaintiff's mental health impairments, for step two and three purposes, using the required psychiatric review technique (R. 15, citing 20 CFR 404.1520(a), 416.920(a)). While he noted a moderate limitation in concentration, persistence and pace for step two purposes, he did not include any such limitation in his formulation of the RFC at step four, but did note that "secondary to his mental impairments, the claimant is limited to unskilled or semi-skilled jobs." To the extent Plaintiff asserts that a finding at step two or three is necessarily equivalent to a finding at step four, he is mistaken.

In *Wright v. Astrue,* 2008 WL 4058864 (M.D. Fla. 2008), the Court dismissed a nearly identical challenge, noting:

> Although Plaintiff does not directly argue that the ALJ failed to include other limitations in his hypothetical, Plaintiff conflates the ALJ's RFC evaluation with certain findings that the ALJ made at step three of the sequential evaluation in determining whether the Plaintiff met a listed impairment. Plaintiff suggests that the ALJ should have included in the hypothetical the "findings" that the claimant's social functioning was moderately limited and his ability to adequately maintain his concentration, attention and pace was moderately limited. The ALJ was not required

> to include this exact language in the hypothetical because these "findings" were part of the threshold determination the ALJ was required to make in determining whether a mental impairment meets or equals a listed impairment at step three and were not limitations that the ALJ included in his RFC finding at step four. Therefore, the ALJ was not required to include in his hypothetical express language that the Plaintiff was moderately limited in social functioning and his ability to maintain his concentration, attention and pace. Accordingly, any suggestion by Plaintiff that the ALJ erred in this regard is without merit.
>
> In addition to the fact that the ALJ was not required to include these precise step three findings in his hypothetical, the hypothetical actually posed by the ALJ included the functional equivalent of these findings. For example, by including a limitation in the hypothetical to simple, low stress unskilled work involving simple instructions the ALJ recognized and took into account any moderate limitation in any ability of the Plaintiff to maintain concentration, persistence and pace.

2008 WL 4058864, 6, *affirmed,* 327 Fed. Appx. 135 (11th Cir. Apr 24, 2009) (unpublished). Here, too, the ALJ included the limitation to unskilled or semi-skilled work in the hypothetical. The hypothetical comports with the appropriate legal standard.

To the extent Plaintiff is contending that the RFC is deficient because it does not include this limitation, this, too, fails to persuade. The record contains no physician-imposed vocational-related restrictions resulting from Plaintiff's mental health condition. As noted in the administrative decision, Plaintiff never experienced any episodes of decompensation, never was hospitalized due to his anxiety and mental issues, and was able to accomplish a wide variety of daily activities including acting as a caretaker for his elderly parents, shopping, driving to doctor's appointments, doing housework and taking care of his personal needs. His mental health evaluation revealed no severe concentration deficits or memory deficits, and he was fully oriented and cooperative. The RFC finding is supported by substantial evidence.

### *THE DOT*

In his last argument, Plaintiff contends that the case should be remanded because the ALJ did not ask the VE whether his testimony conflicted with the information found in the DOT, as required by SSR 00-4p. According to SSR 00-4p, an ALJ is to determine which source to credit when VE

testimony conflicts with the DOT. Here, although the ALJ stated in his determination that "Pursuant to SSR-00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (R. 21), the transcript does not indicate that the ALJ asked the VE about any possible conflict. The issue, therefore, is whether the failure to ask requires remand. The Court finds it does not.

Prior to the adoption of SSR-00-4p, the Eleventh Circuit held "that when the VE's testimony conflicts with the DOT, the VE's testimony trumps the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir.1999) (internal quotation marks omitted). This has not changed, even with the adoption of the SSR. *See Miller v. Commissioner of Social Security,* 246 Fed.Appx. 660, 662, 2007 WL 2461771 (11th Cir. 2007) (unpublished) ("Rulings do not have the force and effect of the law or regulations . . ."); *Sollars-D'Annunzio v. Astrue* 2009 WL 302170, 10 (M.D. Fla. 2009) (noting that in *Miller,* a panel of the Circuit held that "because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE, without resolving the conflict. This is so, according to *Miller,* because the rule in *Jones* that the "VE's testimony trumps the DOT," is binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p.).

Here, Plaintiff did not cross-examine the VE on this issue at the hearing, and, more importantly, Plaintiff has not alleged that there is, in *fact,* any conflict between the DOT and the testimony of the VE. If failure to resolve any conflict prior to relying on VE testimony would not constitute error under *Miller*, the Court sees the failure to inquire as to the existence of any conflict to be harmless, as well, under the circumstances evident here. *See generally Corbitt v. Astrue*, 2008 WL 1776574 (M.D. Fla. 2008).

## *CONCLUSION*

The administrative decision is supported by substantial evidence and was made in accordance with the proper legal standards, and is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on December 14, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record